STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR, V.
TERRELL R. CANNON, RESPONDENT.
666 N.W.2d 734

Filed August 1, 2003.    No. S-02-490.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## INTRODUCTION

On May 24, 2002, amended formal charges (formal charges) were filed by the office of the Counsel for Discipline of the Nebraska Supreme Court, relator, against respondent, Terrell R. Cannon. Five counts were alleged. The alleged facts surrounding each count are set forth below in this opinion. Respondent's answer disputed the allegations. A referee was appointed and heard evidence. The referee filed a report on November 25, 2002. With respect to count I, the referee concluded that respondent had engaged in misconduct and failed to act competently in violation of the Code of Professional Responsibility, Canon 1, DR 1-102(A)(1) and (5), and Canon 6, DR 6-101(A)(2) and (3). With respect to count II, the referee concluded that respondent had engaged in misconduct and failed to act competently in violation of DR 1-102(A)(1), (4), and (5), and DR 6-101(A)(3). With respect to count III, the referee concluded that respondent had engaged in misconduct, paid for a recommendation of his services, improperly contacted prospective clients, and divided fees with a nonlawyer, in violation of DR 1-102(A)(1) and (2); Canon 2, DR 2-103(A); Canon 2, DR 2-104(A)(1), (2), and (3); and Canon 3, DR 3-102(A)(1), (2), and (3). With respect to count IV, the referee concluded that respondent had engaged in misconduct and charged an unwarranted fee in violation of DR 1-102(A)(1) and (4) and Canon 2, DR 2-106(A). With respect to count V, the referee concluded that respondent had engaged in misconduct,

improperly withdrawn from representation, neglected a matter, and failed to represent a client zealously in violation of DR 1-102(A)(1) and (4); Canon 2, DR 2-110(A)(1) and (2); DR 6-101(A)(3); and Canon 7, DR 7-101(A)(2).

The referee recommended that respondent be suspended from the practice of law for 2 years followed by 2 years' probation. Neither relator nor respondent filed exceptions to the referee's report, and relator filed a motion for judgment on the pleadings. In an order entered January 29, 2003, this court sustained in part, and in part overruled the motion. We adopted the referee's findings of fact, and we sustained that portion of the motion which sought a determination that respondent had violated the Code of Professional Responsibility provisions set forth in the formal charges. We overruled the relator's motion to the extent it sought the court's approval of the referee's proposed discipline, and we ordered the parties to submit briefs on the issue of the appropriate discipline to be imposed on respondent.

## FACTS

Respondent was admitted to the practice of law in the State of Nebraska on September 18, 1981. He has practiced in Lincoln. Formal charges were filed on May 24, 2002. The referee was appointed on July 10. A hearing was conducted on October 10, 11, and 15. Evidence regarding the formal charges and two prior reprimands was received. The referee filed his report on November 25.

The substance of the referee's findings with respect to count I may be summarized as follows: A.W. hired respondent in October 1998 to institute a paternity action. Although A.W. signed the petition in August 1999, respondent did not file the petition until October 29, 1999, after he had received notice from the Counsel for Discipline's office of A.W.'s grievance. The petition was styled as a petition in intervention, with A.W. as the intervenor. There was, however, no pending paternity action, a fact respondent failed to investigate. The petition also alleged that paternity and child support had been established, when, in fact, neither had been legally determined. The trial court denied respondent's request to amend the petition, and A.W. terminated respondent's representation. At the referee's hearing, respondent attempted to

excuse his behavior and his delay in filing the petition by claiming that A.W. had failed to give him the address of the putative father on a timely basis. The referee determined that this claim was patently false, however, as A.W. provided respondent with the putative father's address when she completed an initial questionnaire for respondent, and the putative father was later served with process at this same address months after the petition was filed.

The substance of the referee's findings with respect to count II may be summarized as follows: Sharon Selvage hired respondent to represent her in a divorce action. After respondent filed the action on January 11, 2000, counsel for Selvage's husband mailed to respondent a voluntary appearance, which respondent failed to file, but instead mistakenly forwarded to Selvage. Service of process was not perfected, and no activity occurred in the case. Therefore, on or about October 12, the district court automatically dismissed the action without prejudice. After discovering the dismissal, respondent filed a "Notice of Hearing," purporting to set two motions for hearing, a motion to reinstate and a motion to set case for trial. Respondent failed, however, to file either motion.

A hearing was held on October 27, 2000, and the district court judge refused to reinstate the case. On November 6, respondent wrote to Selvage:

> As you are aware, we were scheduled to have a hearing on October 27, 2000 . . . on the divorce, and [the husband's] attorney had filed a Voluntary Appearance, but for some unknown reason the record and the court did not have a copy of it, thus [the district court] dismissed the case without prejudice, allowing us to re-file the action again.
>
> I am in the process of re-filing your Petition [and] should you have any questions or objections, please contact me as soon as possible, if not I will re-file it omn [sic] or before November 15, 2000.

The referee concluded that this letter contained several misstatements. First, Selvage's husband's attorney had not filed the voluntary appearance. Second, the letter implied the action had been dismissed on October 27, 2000, as a result of the hearing, when, in fact, it had been automatically dismissed several weeks earlier. Finally, respondent could not simply refile the petition, but had to draft a new one to be signed by Selvage.

In December 2000, Selvage executed a new petition prepared by respondent and returned the same to him. Respondent told Selvage that he filed the new petition in December. On February 28, 2001, however, respondent contacted Selvage and admitted that the new petition had actually been lost and that he needed her to reexecute a petition. On March 10, Selvage received the replacement petition in the mail. She subsequently dismissed respondent as her attorney.

The substance of the referee's findings with respect to count III may be summarized as follows: Beginning in 1993 or 1994 and continuing until 1999, respondent had a fee-splitting agreement with Hoang Nguyen, a Vietnamese national who was not an attorney, pursuant to which respondent shared fees with Nguyen in exchange for Nguyen's directing Vietnamese clients to respondent, which clients were previously unknown to respondent. Nguyen worked out of respondent's office on North 27th Street in Lincoln, and Nguyen paid a portion of the rent and utilities for the office. The referee identified the following specific examples of respondent's fee-splitting arrangement with Nguyen:

1. On August 17, 1999, respondent settled a case for Cuc Kim, receiving a fee of $2,446.66. On that same day, respondent paid Nguyen $1,233.33, which Nguyen testified was for the Kim case.

2. In October 1999, respondent received a fee in the amount of $3,466.66 in the Son Do case. On October 2, respondent paid Nguyen $1,877.33, which Nguyen testified was for the Do case.

3. Respondent received a fee in the amount of $9,000 for the Van Bui case. On January 19, 1999, respondent paid Nguyen $5,371.25, which Nguyen testified was for the Bui case, including expenses.

4. Respondent paid Nguyen a total of $29,058.49 in 1997.

The above evidence and the fact that respondent had no explanation as to "virtually any payment that he made" to Nguyen led the referee to the conclusion that respondent had a fee-splitting arrangement with Nguyen. At the hearing, in response to this evidence, respondent claimed that he had been "set up" by Nguyen. The referee concluded, however, that he could find no credible evidence of a setup, in particular noting that Nguyen's fee-splitting arrangement with respondent ended in the fall of 1999 and that Nguyen did not contact the Counsel for

Discipline's office until May 2000, after respondent refused to provide Nguyen with a 1099 tax form for 1999.

The substance of the referee's findings with respect to count IV may be summarized as follows: On January 11, 2001, Anh Pham and Thang Tran hired respondent to represent them with regard to an automobile accident. Shortly thereafter, they hired a new attorney to represent them with regard to the same accident. On or about January 24, Pham sent notice to respondent that she was terminating his representation. On or about March 29, respondent sent a notice of attorney's lien to the insurance company which insured the driver who had injured Pham and Tran, claiming entitlement to $500 for services rendered to Pham. The new attorney later found out about the lien and asked respondent about it. In a letter dated August 8, 2001, respondent claimed that Pham and Tran had come to his office and signed contracts, that his office had sought out medical care for Pham and Tran and scheduled appointments, that his office had handled a total of five calls from Pham and Tran, and that his office had handled the property damage. Ultimately, the new attorney paid respondent $200 to settle the matter.

The referee concluded that the August 8, 2001, letter was not accurate. The new attorney, not respondent, had handled the property damage claim. Respondent had never met Pham, and at the referee's hearing, respondent admitted that the majority of the "work" on the case was unkept appointments.

The substance of the referee's findings with respect to count V may be summarized as follows: On or about July 20, 1998, Melvin Northrup, Jr., retained respondent to represent him in a workers' compensation claim against Northrup's former employer. Respondent filed the action, and trial was later held on the petition. Following the trial, the Workers' Compensation Court ruled against Northrup. Pursuant to Northrup's direction, respondent filed an appeal. In a letter to Northrup, respondent assured Northrup that he would deliver his "top most performance to win" the appeal. Respondent failed, however, to file a brief or to appear at the review hearing. Respondent notified the court that he would not attend the review hearing but did not advise Northrup. The appeal was denied, and respondent failed to notify Northrup of the outcome of the appeal.

In his report, the referee specifically found by clear and convincing evidence that respondent had violated the disciplinary rules recited above. With respect to the discipline which ought to be imposed for the foregoing violations, and considering the mitigating and aggravating factors the referee found present in the case, the referee recommended a 2-year suspension followed by 2 years' probation.

In view of the fact that neither party filed written exceptions to the referee's report, on December 9, 2000, relator filed a motion under Neb. Ct. R. of Discipline 10(L) (rev. 2001). When no exceptions are filed, the Nebraska Supreme Court may consider the referee's findings final and conclusive. *State ex rel. Counsel for Dis. v. Apker*, 263 Neb. 741, 642 N.W.2d 162 (2002). In an order filed January 29, 2003, this court sustained in part, and in part overruled the motion. We determined that since neither party had filed exceptions to the referee's report, the referee's factual findings were "final and conclusive," and we sustained that portion of the motion which sought a determination that respondent had violated the Code of Professional Responsibility. Accordingly, we found that each of the five counts alleged in the formal charges was supported by clear and convincing evidence, and we concluded that by virtue of respondent's conduct, respondent had violated DR 1-102(A)(1), (2), (4), and (5); DR 2-103(A); DR 2-104(A)(1), (2), and (3); DR 2-106(A); DR 2-110(A)(1) and (2); DR 3-102(A)(1), (2), and (3); DR 6-101(A)(2) and (3); and DR 7-101(A)(2).

To the extent the relator's motion sought this court's approval of the referee's proposed discipline, the motion was overruled. We reserved the issue of discipline to this court, and we ordered the parties to file simultaneous briefs on the issue of the appropriate discipline, including but not limited to disbarment, to be imposed against respondent. The parties having filed their briefs and oral argument having been heard, the cause is now ready for final disposition.

## ANALYSIS

We have stated that " '[t]he basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the

circumstances.'" *State ex rel. NSBA v. Frank*, 262 Neb. 299, 304, 631 N.W.2d 485, 490 (2001) (quoting *State ex rel. NSBA v. Brown*, 251 Neb. 815, 560 N.W.2d 123 (1997)). Neb. Ct. R. of Discipline 4 (rev. 2001) provides that the following may be considered by the court as sanctions for attorney misconduct: (1) disbarment; (2) suspension for a fixed period of time; (3) probation in lieu of suspension, on such terms as the court may designate; (4) censure and reprimand; or (5) temporary suspension.

With respect to the imposition of attorney discipline in an individual case, we have stated that "'[e]ach case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case.'" *Frank*, 262 Neb. at 304, 631 N.W.2d at 490 (quoting *State ex rel. NSBA v. Rothery*, 260 Neb. 762, 619 N.W.2d 590 (2000)). See, also, *State ex rel. Counsel for Dis. v. Thompson*, 264 Neb. 831, 652 N.W.2d 593 (2002). For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding. *Thompson, supra; Frank, supra; State ex rel. NSBA v. Freese*, 259 Neb. 530, 611 N.W.2d 80 (2000); *State ex rel. NSBA v. Denton*, 258 Neb. 600, 604 N.W.2d 832 (2000).

To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *Thompson, supra; State ex rel. Counsel for Dis. v. Apker*, 263 Neb. 741, 642 N.W.2d 162 (2002); *State ex rel. NSBA v. Gallner*, 263 Neb. 135, 638 N.W.2d 819 (2002).

The evidence in the present case establishes a lengthy pattern of numerous and serious offenses including the mismanagement of cases to the detriment of clients. With respect to count III involving fee-splitting, notwithstanding the testimony and documentary evidence which established this charge, respondent continued to deny the allegations and claimed he was "set up." Additionally, the referee's report determined that with regard to disputed evidence presented at the hearing, respondent's

testimony was "not credible," and that respondent "was prone to blame his failings upon his office staff." We have previously recognized that a respondent's lack of candor during attorney disciplinary proceedings "demonstrates neither a present nor a future fitness to continue in the practice of law." *Denton,* 258 Neb. at 610, 604 N.W.2d at 839. Additionally, a lawyer may not avoid responsibility for misconduct by hiding behind an employee's behavior and may not avoid a charge of unprofessional conduct by contending his or her employees are incompetent. *State ex rel. NSBA v. Kirshen,* 232 Neb. 445, 441 N.W.2d 161 (1989). See *State ex rel. Counsel for Dis. v. Petersen,* 264 Neb. 790, 652 N.W.2d 91 (2002) (Gerrard, J., concurring in the result).

With respect to the appropriate discipline to be imposed, respondent focused almost entirely on the fee-splitting count and so circumscribed urged this court to accept the referee's recommendation of 2 years' suspension followed by 2 years' probation. In this regard, this court is aware that discipline imposed for cases involving fee-splitting has been variable in other jurisdictions, running from 6-months' suspension, see *In the Matter of H. L. Trauffer,* 272 Ga. 499, 532 S.E.2d 96 (2000), to disbarment, see *Matter of Disciplinary Action Against Nassif,* 547 N.W.2d 541 (N.D. 1996). We emphasize that the present case is not one involving formal charges limited to a single count of fee-splitting, but, rather, encompasses five counts involving a variety of violations, in which many of the underlying acts occurred over a timeframe during which respondent was already subject to the attorney disciplinary process occasioned by two previous attorney discipline cases. Although we take the fee-splitting disciplinary jurisprudence in other cases into account, we must nevertheless focus on the proper discipline to be imposed herein which results from five separate and varied counts which were preceded by two prior reprimands.

█ This court has consistently noted that cumulative acts of attorney misconduct are distinguishable from isolated incidents and are therefore deserving of more serious sanctions. *State ex rel. NSBA v. Miller,* 258 Neb. 181, 602 N.W.2d 486 (1999). In this regard, we note that the record reflects that respondent has been involved in two prior disciplinary proceedings. In 1997, respondent received a private reprimand for violating DR 6-101(A)(3)

and Canon 9, DR 9-102(A)(1) and (2), (B)(3) and (4), and (C)(1). With regard to these rule violations, respondent was found to have commingled personal and private funds in his attorney trust account and to have paid personal expenses from that account. Respondent was also found to have failed to account for or distribute interest earned on his attorney trust account.

In 1999, respondent received another private reprimand. In this second disciplinary proceeding, it was determined that respondent violated DR 1-102(A)(1) and (5), DR 6-101(A)(3), and DR 7-101(A)(2) when he failed to maintain complete and accurate records of client proceeds and distributed advertising materials that could have been misleading and could have created in the reader an unjustified expectation concerning respondent's legal services.

In the instant case, we acknowledge that a
> judgment of permanent disbarment is a most severe penalty, as anyone who is dependent upon some special skill or knowledge for his own livelihood will quickly recognize if he contemplates for a moment the impact of being deprived by judicial fiat of the use of that skill and knowledge.

*State ex rel. Nebraska State Bar Assn. v. Cook,* 194 Neb. 364, 387, 232 N.W.2d 120, 132 (1975). When we balance, however, the severity of respondent's current rule violations, involving repeated acts of neglect and a fee-splitting arrangement with a nonlawyer that was ongoing for at least 5 years, with the cumulative nature of respondent's actions, the need to protect the public, the need to deter others from similar conduct, the reputation of the bar as a whole, and respondent's privilege to practice law, we can only conclude that the appropriate judgment is to disbar respondent. See *State ex rel. NSBA v. Howze,* 260 Neb. 547, 618 N.W.2d 663 (2000).

We have considered the record, the findings which have been established by clear and convincing evidence, and the applicable law. We have also considered respondent's lack of candor during the disciplinary process and his two prior disciplinary proceedings. Upon due consideration, the court rejects the referee's recommendation and finds instead that respondent should be disbarred.

## CONCLUSION

It is the judgment of this court that respondent should be disbarred from the practice of law. We therefore order that respondent be disbarred effective immediately. Respondent is directed to comply with Neb. Ct. R. of Discipline 16 (rev. 2001), and upon failure to do so, respondent shall be subject to punishment for contempt of this court. Respondent is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 23(B) (rev. 2001).

JUDGMENT OF DISBARMENT.