673 N.W.2d 889 (2004)
267 Neb. 353
STATE of Nebraska ex rel. COUNSEL FOR DISCIPLINE of the Nebraska Supreme Court, relator
v.
Rufino J. VILLARREAL, respondent.
Nos. S-03-042, S-03-368.
Supreme Court of Nebraska.
January 30, 2004.
*892 HENDRY, C.J., and WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.

I. INTRODUCTION
This matter involves two separate attorney discipline proceedings, cases Nos. S-03-042 and S-03-368, filed against respondent, Rufino J. Villarreal. We consolidate the two cases for purposes of this opinion. Respondent was admitted to the practice of law in the State of Nebraska on April 12, 1994, and a large percentage of his practice entailed immigration cases.

II. PROCEDURAL HISTORY

1. CASE NO. S-03-042
On January 14, 2003, the chair of the Committee on Inquiry of the Second Disciplinary District filed an application for temporary suspension against respondent. On January 15, this court ordered respondent to show cause why the court should not enter an order temporarily suspending his license to practice law in this state. Respondent filed a response, and following due consideration thereof, on January 29, this court entered an order temporarily suspending respondent from the practice of law.
On December 16, 2003, the office of the Counsel for Discipline of the Nebraska Supreme Court, relator, filed a motion for contempt against respondent alleging that despite the temporary suspension order, respondent continued to engage in the practice of law. On December 17, this court ordered respondent to show cause why the court should not enter an order holding respondent in contempt of court for his willful disobedience of its order of temporary suspension dated January 29, 2003. Respondent was served personally on December 29. No response has been received by the court, and the matter is now before the court for disposition.

2. CASE NO. S-03-368
On April 2, 2003, formal charges were filed by relator against respondent. On May 5, additional formal charges were filed. Respondent filed answers to the formal charges disputing the allegations. A referee was appointed and heard evidence. Although 19 charges were filed, relator dismissed 8 charges prior to or at the hearing conducted by the referee.
The referee filed a report on November 26, 2003. With respect to the 11 counts at issue in the charges, the referee concluded that respondent's conduct had breached disciplinary rules of the Code of Professional Responsibility and his oath as an attorney in 10 of those counts. As to the 11th count, the referee did not find evidence of a rule violation, and that count will not be further addressed in this opinion. The referee recommended that respondent be disbarred from the practice of law. Neither relator nor respondent filed exceptions to the referee's report.
On December 9, 2003, relator filed a motion for judgment on the pleadings under Neb. Ct. R. of Discipline 10(L) (rev. 2001). Respondent did not file a response to relator's motion, and the matter is now before the court for disposition.

*893 III. FACTUAL BACKGROUND

1. CASE NO. S-03-368
Each of the formal charges filed against respondent involved immigration clients of respondent, and as stated above, the referee concluded that respondent's conduct had breached disciplinary rules of the Code of Professional Responsibility and his oath as an attorney in 10 separate counts.
The referee's findings are contained in a 112-page report. We repeat the essential findings here. In summary, each of respondent's clients involved in this case sought to achieve legal status. According to the referee's report, respondent engaged in a "scheme" in which he would knowingly file unwarranted asylum claims on behalf of his clients, with no intention of pursuing such claims. The clients, having been brought to the attention of the immigration authorities, would then be placed in deportation proceedings, at which time respondent planned to apply for "cancellation" relief, a procedure by which an illegal immigrant might obtain permanent resident status. According to the referee, respondent never intended to follow through with the asylum claims he filed; rather, he used them as a device to have his clients placed in deportation proceedings where he might assert a cancellation claim. The referee found that respondent's "scheme" was "not creative lawyering. It is dishonest and deceitful conduct on the part of the respondent...."
The referee stated that respondent, in carrying out his "scheme," had engaged in a "long, repeated pattern" of filing asylum claims on behalf of his clients that were unwarranted under existing law. Referring to the testimony of clients, the referee determined that "[u]nder any plausible reading of principles or current United States or international asylum law, the type of asylum claims advanced by the respondent on behalf of the witnesses... ha[d] no merit whatsoever." The referee further found that the respondent "frequently, through either neglect, failure to develop the cases, or intentionally, submitted asylum claims that had no basis in fact."
The referee further found that the record was "replete with evidence of [respondent's] repeated and substantial neglect of his clients' cases." According to the referee, respondent failed to communicate adequately and clearly with his clients, many of whom did not speak English. The referee also found that respondent failed to develop the clients' cases, either factually or legally, and failed to attend immigration proceedings with his clients.
The referee determined that respondent's conduct was prejudicial to the administration of justice. According to the referee's report, respondent's conduct was not only harmful to his clients, but it was also harmful to the legal system in general. "By filing asylum claims that rarely, if ever, had any credible factual or legal basis, the respondent simultaneously exposed his clients to deportation proceedings, and contributed to the burgeoning caseload in an already overworked immigration system."
Referring to the 10 counts for which the evidence established violations of the Code of Professional Responsibility, the referee found by clear and convincing evidence that as a result of respondent's conduct, respondent had violated Canon 1, DR 1-102(A)(1) (violating disciplinary rule), DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and DR 1-102(A)(5) (engaging in conduct prejudicial to administration of justice); Canon 6, DR 6-101(A)(2) (handling legal matter without adequate preparation) and DR 6-101(A)(3) (neglecting legal matter); and Canon 7, DR 7-101(A)(2) *894 (failing to carry out contract for employment), DR 7-101(A)(3) (engaging in conduct prejudicial to client), DR 7-102(A)(2) (knowingly advancing unwarranted claim or defense), and DR 7-102(A)(5) (knowingly making false statement). The referee also found that respondent had violated his oath of office as an attorney.
In his report, the referee specifically found by clear and convincing evidence in case No. S-03-368 that respondent had violated the disciplinary rules recited above and his oath as an attorney. See Neb.Rev.Stat. § 7-104 (Reissue 1997). With respect to the sanction which ought to be imposed for the foregoing violations, and considering the mitigating and aggravating factors the referee found present in the case, the referee recommended that respondent be disbarred from the practice of law.

2. CASE NO. S-03-042
As noted above, respondent was temporarily suspended from the practice of law by an order of this court in case No. S-03-042 dated January 29, 2003. On December 16, relator filed a motion for contempt alleging that respondent continued to engage in the practice of law from his office in Omaha, Nebraska. Attached to the motion are numerous exhibits supporting the allegation. These exhibits include an application for asylum bearing respondent's signature as the "Preparer" and dated November 3, 2003; a December 2 billing statement in the total amount of $962.01 from the "Villarreal Law Office," itemizing work performed from October through December; and a flyer purportedly sent to clients, which provided, "Dear Client: Just for December, if you pay 50% of your balance, we will give you credit for the remaining 50%. This is a promotion that won't be repeated again."
After reviewing the motion and its attachments, and finding cause demonstrated by relator, on December 17, 2003, this court issued an order to show cause why respondent should not be held in contempt of the court's January 29 order. Respondent was personally served with the show cause order on December 29. Respondent failed to respond to the show cause order.

IV. ANALYSIS

1. FINDINGS

(a) CASE NO. S-03-368
In view of the fact that neither party filed written exceptions to the referee's report, relator filed a motion for judgment on the pleadings under rule 10(L). When no exceptions are filed, the Nebraska Supreme Court may consider the referee's findings final and conclusive. State ex rel. Counsel for Dis. v. Hart, 265 Neb. 649, 658 N.W.2d 632 (2003). Based upon the findings in the referee's report, which we consider to be final and conclusive, we conclude that the violations found by the referee are supported by clear and convincing evidence, and the motion for judgment on the pleadings is granted.
A proceeding to discipline an attorney is a trial de novo on the record. State ex rel. Counsel for Dis. v. Sipple, 265 Neb. 890, 660 N.W.2d 502 (2003). To sustain a charge in a disciplinary proceeding against an attorney, a charge must be established by clear and convincing evidence. Id. Violation of a disciplinary rule concerning the practice of law is a ground for discipline. Hart, supra.
Based on the record and the undisputed findings of the referee, we find that the above-referenced facts have been established by clear and convincing evidence. Based on the foregoing evidence, we conclude in case No. S-03-368 that by virtue of respondent's conduct, respondent has violated DR 1-102(A)(1), (4), and (5); DR *895 6-101(A)(2) and (3); DR 7-101(A)(2) and (3); and DR 7-102(A)(2) and (5). We further conclude in case No. S-03-368 that respondent has violated the attorney's oath of office. See § 7-104.

(b) CASE NO. S-03-042
Based upon the motion for contempt and the supporting documents attached thereto, and respondent's failure to show cause why he should not be held in contempt, we find the record in case No. S-03-042 sufficient to find respondent to be in contempt of this court and do hereby find respondent to be in contempt of this court.

2. FACTORS AFFECTING DISCIPLINE TO BE IMPOSED
We have stated that "`[t]he basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances.'" State ex rel. NSBA v. Frank, 262 Neb. 299, 304, 631 N.W.2d 485, 490 (2001) (quoting State ex rel. NSBA v. Brown, 251 Neb. 815, 560 N.W.2d 123 (1997)). Neb. Ct. R. of Discipline 4 (rev.2001) provides that the following may be considered by the court as sanctions for attorney misconduct: (1) disbarment; (2) suspension for a fixed period of time; (3) probation in lieu of suspension, on such terms as the court may designate; (4) censure and reprimand; or (5) temporary suspension.
With respect to the imposition of attorney discipline in an individual case, we have stated that "`[e]ach case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case.'" Frank, 262 Neb. at 304, 631 N.W.2d at 490 (quoting State ex rel. NSBA v. Rothery, 260 Neb. 762, 619 N.W.2d 590 (2000)). For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding. Frank, supra; State ex rel. NSBA v. Freese, 259 Neb. 530, 611 N.W.2d 80 (2000); State ex rel. NSBA v. Denton, 258 Neb. 600, 604 N.W.2d 832 (2000).
To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. State ex rel. Counsel for Dis. v. Hart, 265 Neb. 649, 658 N.W.2d 632 (2003); State ex rel. NSBA v. Gallner, 263 Neb. 135, 638 N.W.2d 819 (2002).
The determination of an appropriate penalty to be imposed on an attorney requires consideration of any aggravating or mitigating factors.

3. DISCIPLINE TO BE IMPOSED

(a) CASE NO. S-03-368
The evidence in case No. S-03-368 establishes, inter alia, that respondent committed 60 different violations of disciplinary rules, including engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; engaging in conduct prejudicial to the administration of justice; handling matters without adequate preparation; neglecting legal matters; failing to carry out contracts for employment; engaging in conduct prejudicial to his clients; knowingly advancing unwarranted claims; and knowingly making false statements.
Moreover, the referee found that based upon his observations during the hearing, *896 the clients respondent represented were "largely uneducated, at least in the sense of a formal education, not fluent in English, legally vulnerable, generally very trusting, and so desirous of obtaining legal immigration status in the United States that they were willing to try any proposed solution suggested by the respondent." The referee found that these were clients with whom respondent needed to exercise care. The referee observed:
It is true that the respondent's clients did not have, relatively speaking, a substantial amount of money at stake in their cases. But they had ... something at stake much more valuable than money. They had at stake their very ability to live in the United States with proper immigration status, their financial livelihood, and, if they were unable to obtain legal status, their ability to leave the United States other than under the cloud of deportation, so that they might have a chance to immigrate legally at some point. As an attorney quoted by the California Supreme Court recognized, in terms of what is at stake for applicants in asylum cases, "Asylum cases are probably the most sensitive cases that the field of immigration deals with. They are like death penalty cases." Gadda v. State Bar, 50 Cal.3d 344, 354, 787 P.2d 95, 101, 267 Cal.Rptr. 114, 120 (1990). The respondent's conduct, in almost every instance, jeopardized these very fundamental interests of his clients.
The referee noted in his report that he found very little evidence of remorse on the part of respondent and that respondent showed no sign of recognizing that his conduct was defiant in any way. According to the referee, "I believe the respondent would, if currently practicing, engage in the same type of conduct that brought us to these proceedings." In connection with this observation of the referee, we note that one of the attachments to the motion for contempt filed in case No. S-03-042 is an asylum application prepared by respondent.
This court has consistently noted that cumulative acts of attorney misconduct are distinguishable from isolated incidents and are therefore deserving of more serious sanctions. See, State ex rel. Counsel for Dis. v. Cannon, 266 Neb. 507, 666 N.W.2d 734 (2003); State ex rel. NSBA v. Miller, 258 Neb. 181, 602 N.W.2d 486 (1999). In this regard, we note that the record reflects that respondent has been involved in two prior disciplinary proceedings. In 1998, respondent received a private reprimand for violating DR 1-102(A)(1), (4), and (5) and DR 7-102(A)(5). In 1999, respondent received another private reprimand for violating DR 1-102(A)(1), (5), and (6), based on respondent's misdemeanor conviction for false reporting. With the exception of DR 1-102(A)(6), respondent's prior rule violations are essentially identical to the types of violations which were repeated in case No. S-03-368.
As mitigating factors, we note that the record contains documents submitted by respondent in case No. S-03-368 to show work he has performed as an attorney in the community.
We have considered the record, the findings which have been established by clear and convincing evidence, and the applicable law. Upon due consideration, the court agrees with the referee's recommendation and concludes that respondent should be disbarred from the practice of law.

(b) CASE NO. S-03-042
This court has previously held in State ex rel. NSBA v. Thierstein, 218 Neb. 603, 357 N.W.2d 442 (1984), and State ex rel. NSBA v. Frank, 219 Neb. 271, 363 *897 N.W.2d 139 (1985), that continuing to practice law contrary to this court's order warrants a sanction of disbarment. Based on this precedent, the motion for contempt and the supporting documents attached thereto, and respondent's failure to show cause why he should not be held in contempt, we find the record in case No. S-03-042 sufficient to find respondent to be in contempt of this court and, as noted above, find respondent to be in contempt of this court. Upon due consideration, we conclude that respondent's contempt is an independent basis for disbarment from the practice of law. Continued contempt will subject respondent to the contempt provisions of Neb.Rev.Stat. § 25-2121 (Reissue 1995).

V. CONCLUSION
We conclude that the proper discipline in each of the cases Nos. S-03-042 and S-03-368 is disbarment. Respondent is disbarred from the practice of law forthwith. Respondent is directed to pay costs and expenses in accordance with Neb.Rev.Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 23(B) (rev.2001).
JUDGMENT OF DISBARMENT IN NOS. S-03-042, S-03-368.