631 N.W.2d 913 (2001)
262 Neb. 481
STATE of Nebraska ex rel. COUNSEL FOR DISCIPLINE OF THE NEBRASKA SUPREME COURT, Relator,
v.
Tedd C. HUSTON, Respondent.
No. S-01-087.
Supreme Court of Nebraska.
August 31, 2001.
*916 HENDRY, C.J., and WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.

INTRODUCTION
On January 18, 2001, formal charges were filed by the office of the Counsel for Discipline of the Nebraska Supreme Court, relator, against Tedd C. Huston, respondent. A referee was appointed and heard evidence. Our opinion discusses only those charges the referee found were established by clear and convincing evidence.
The formal charges alleged, inter alia, that Huston violated the following provisions of the Code of Professional Responsibility, Canons 1, 2, and 9:
DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
....
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
....
DR 2-106 Fees for Legal Services.
(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
....
DR 9-102 Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable bank or savings and loan association accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay account charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the *917 disputed portion shall not be withdrawn until the dispute is finally resolved.
The formal charges also alleged Huston violated his oath as an attorney. See Neb. Rev.Stat. § 7-104 (Reissue 1997).
On January 19, 2001, Huston filed an answer to the formal charges, admitting certain of the allegations, but denying that he had violated either the disciplinary rules or his oath as an attorney. On January 24, this court appointed a referee to hear evidence and make a recommendation as to the appropriate sanction to be imposed. A referee hearing was held on March 28, at which hearing evidence was adduced and argument was made. On May 22, the referee filed his report. On May 23, Huston sent a letter to the referee, stating that he did not intend to file any exceptions to the report, but noting two factual matters in the report he believed needed correction. On June 1, the referee filed Huston's letter as a correction to the original report.
Relator has filed a motion under Neb. Ct. R. of Discipline 10(L) (rev.2001), which provides that when no exceptions are filed, the Nebraska Supreme Court may consider the referee's findings final and conclusive. Thus, because no exceptions were filed, we consider the referee's findings to be final and conclusive.
The relator's burden of proof in disciplinary proceedings is to establish the allegations set forth in the formal charges against the attorney by clear and convincing evidence. See, State ex rel. NSBA v. Jensen, 260 Neb. 803, 619 N.W.2d 840 (2000); State ex rel. NSBA v. Freese, 259 Neb. 530, 611 N.W.2d 80 (2000). Based on the final and conclusive findings in the referee's report, we conclude that the formal charges are supported by the evidence and grant relator's motion under rule 10(L). Huston is suspended from the practice of law in the State of Nebraska for 6 months, as set forth below.

FACTS
The substance of the referee's findings may be summarized as follows: Huston was admitted to practice law in the State of Nebraska on June 21, 1952. He has been engaged in the private practice of law in Broken Bow, Custer County, Nebraska, since that date and at all times relevant to these disciplinary proceedings. In November 1997, Huston became semiretired and moved to Mesa, Arizona. He maintained his office in Broken Bow, however, splitting his time between his home in Arizona and his office in Broken Bow. Huston has employed the same office secretary for 38 years, and she works in the Broken Bow office 2 days per week when Huston is not in town. Huston and his secretary communicate by either telephone or fax once or twice a week when Huston is in Arizona.
Huston began representing Henrietta Johnson McCallister in 1956 or 1957. During the course of his representation of McCallister, Huston prepared her last will and testament, together with two codicils to the will, and also prepared her annual tax returns. McCallister died on November 22, 1997. At the time of her death, her estate totaled $344,974.81 in liquid funds held in four financial institutions in and around Broken Bow, and some securities. Of this amount, $137,892.53 was property subject to probate and $207,084.28 was jointly held nonprobate property. McCallister owned no real estate at the time of her death.
Huston was in Arizona at the time of McCallister's death. Upon learning of her death, however, he directed his secretary to begin preparing the opening documents for the estate. He then drove to Broken Bow to commence the probate of the estate. *918 On December 2, 1997, Huston appeared in Custer County Court, and McCallister's will and the two codicils were admitted into informal probate. Richard S. Stone and William A. Johnson were appointed copersonal representatives of the estate.
Following the court's hearing, Huston, Stone, and Johnson met, and after visiting certain of the financial institutions where McCallister had maintained funds and reviewing her tax returns, they determined that the estate had assets of approximately $350,000 to $400,000 and that there were 26 heirs and beneficiaries. The value of the estate included nonprobate property passing by right of survivorship.
During this meeting, Huston discussed fee arrangements with the copersonal representatives. The referee acknowledged that there was a dispute in the evidence concerning the fee arrangement. Huston's customary practice was to compute an attorney fee at the rate of 2.5 percent of the probate property and 1 percent of the nonprobate property. Based upon the evidence, the referee concluded that Huston agreed to represent the copersonal representatives on an hourly basis of $125 or 2.5 percent of the value of the estate, whichever amount was less.
During the December 2, 1997, meeting, Johnson and Stone signed a $5,000 voucher and delivered it to Huston as the initial payment of his attorney fee. Huston deposited this fee directly into his office operating account and not into his trust account.
Huston worked on the McCallister estate from December 1997 to December 1998. Some of the work he performed in closing the estate included the following: On February 11, 1998, Huston completed the estate inventory, which was filed with the Custer County Court and county assessor on February 18. On May 26, Huston began preparing the final accounting. On June 1, Huston reviewed the final accounting. On July 23 and 24, Huston worked on and consulted with Stone regarding the final accounting for the estate. On August 28 and September 1, Johnson signed closing documents. On November 30, the final accounting, signed by both Johnson and Stone and showing receipts and disbursements, was filed with the county court. Although signed and dated April 10, 1998, the "Informal Closing of Estate by Verified Statement" was not filed with the county court until November 30.
The list of disbursements in the final accounting showed that Huston took a partial attorney fee of $5,000 on December 2, 1997, a check for $2,067.52 (including reimbursement for expenses of $67.52) on February 9, 1998, a legal fee of $2,000 on April 8, and $500 as the balance of the attorney fee on May 26, for a total attorney fee of $9,500. None of these payments were deposited into a trust account. Furthermore, Huston did not keep contemporary records of the time he expended working on the estate, and he did not present itemized billing statements to the copersonal representatives before requesting payment from the estate.
On December 1, 1998, Amy Seever Mooney, one of the heirs, filed an objection to the final accounting based upon Huston's attorney fees. Other heirs wrote letters joining in the objection. Huston filed a motion to dismiss the objection, attaching to the motion a statement of his time and charges. The county court held a hearing on the objection on April 7, 1999. No testimony was taken, but the court heard oral arguments from Huston and Jeff Seever, another heir, both of whom appeared pro se.
*919 The county court determined that Huston's attorney fees were excessive. The court found that the estate consisted of liquid assets which should have taken very little time to assemble and distribute. The court further found that after reviewing the statement of charges attached to Huston's motion to dismiss, there was "considerable duplication of effort" in handling estate matters between Huston and his secretary. The court determined that much of the time Huston indicated that he had spent on estate activities was overstated. Finally, the court found that the charges for work Huston's secretary had performed as a legal assistant were excessive, given that much of the itemized work was more secretarial in nature. Accordingly, the court reduced Huston's attorney fees from $9,500 to $4,000.
Without advising Johnson or gaining his consent, Huston immediately filed an appeal from the county court's order. The district court dismissed Huston's appeal for lack of jurisdiction. Huston then appealed the district court's decision to the Nebraska Court of Appeals. The referee's report states that the appeal was "still pending" as of the date of the report.
On June 1, 1999, the Counsel for Discipline's office received a letter from Seever complaining about the amount and the early withdrawal of Huston's attorney fees, as well as his appeal of the county court's order. The Counsel for Discipline forwarded Seever's complaint to Huston and asked for Huston to reply, as well as to provide the Counsel for Discipline with a copy of his office file in the McCallister estate.
After receiving the notice from the Counsel for Discipline's office, on June 28, 1999, Huston wrote Johnson and sent him an affidavit for his signature regarding the attorney fee agreement. The affidavit Huston prepared stated that Huston had told the copersonal representatives that the attorney fee would amount to approximately $10,000 plus expenses. On July 6, Johnson replied to Huston's letter, indicating a different recollection concerning the attorney fee agreement. In his letter, Johnson stated that there was no mention of $10,000, but, rather, the agreed-upon fee was $125 per hour or 2.5 percent of the estate, whichever amount was less.
On October 18, 1999, the Counsel for Discipline's office submitted written questions to Huston, which questions addressed, inter alia, Huston's fee agreement with the copersonal representatives. In his reply to the Counsel for Discipline's inquiry, Huston stated that Johnson did not remember the fee arrangement and had declined to sign an affidavit. Furthermore, when Huston provided the Counsel for Discipline's office with a copy of his file on the McCallister estate, he failed to include a copy of Johnson's July 6 letter. Huston later claimed that he did not forward the letter with the file because the letter was in Arizona. Huston's secretary testified, however, that the last time she had seen the letter, it was in the office file in Broken Bow.
With regard to the formal charges, the referee determined that Huston's handling of the estate took longer than it should have. The referee found that the delay was not due to the complexity of the estate. He found there were no unusual legal issues involving the probate of the will or the administration of the estate, nor any unusual estate or inheritance tax issues. The estate was liquid, did not include any real estate, and, except for 100 shares of stock, was held in financial institutions. The assets were easily inventoried and collected. Because there were adequate estate assets to pay inheritance taxes due from the joint tenancy beneficiaries, there was no need to require contribution. *920 The heirs and beneficiaries were easily located, yet they experienced substantial delay in receiving their distributions. In summary, the referee found there was no satisfactory explanation for the length of time it took to close the estate.
The referee attributed the delay in closing the estate to Huston's practicing law in Nebraska while in the process of retiring to live in Mesa, Arizona. The referee found Huston's attempt to continue to practice while entering retirement led to difficulty in counseling clients, supervising an office, remaining current on legal developments, and maintaining focus on professional responsibilities.
The referee also found that Huston received advances on his attorney fee which he failed to deposit in his trust account, but, rather, deposited in his office operating account. The payments Huston received always exceeded the amount of time he had devoted to the case. He received $5,000 in December 1997 when he had performed very little work on the estate. He received an additional $2,000 in February 1998, yet if he were paid based upon the rate of $125 per hour, he had devoted only $2,625 worth of time on the case. In April, Huston received an additional $2,000 as an attorney fee, when he had spent a total of $5,310 worth of time on the case. When Huston received his final payment of $500 in May 1998, he had devoted a total of $6,562.50 worth of time on the case. When the estate was concluded in December 1998, Huston had been paid a total of $9,500, yet if his services had been billed out at the hourly rate of $125, he had spent only $8,750 worth of time on the case.
Huston claimed that the initial payment of $5,000 was an "engagement retainer," which he stated was earned when received, a practice he had used regularly with clients. The referee found, however, that under the fee agreement, which provided for an attorney fee based upon the lesser of the hourly or percentage fee, the fee could only be "earned" when Huston had performed the work.
The referee determined that Huston had charged an excessive fee for his representation of the copersonal representatives. Under the fee agreement, the referee found that Huston was entitled to the lesser of 2.5 percent of the probate assets plus 1 percent of the nonprobate assets, a total of $5,518.17, or $125 per hour, a total of $8,750. Thus, Huston's fee for the McCallister estate should have been the lesser amount of $5,518.17, rather than the $9,500 he received from the estate. The referee noted that the county judge, who relied upon his experience in probate matters, reduced Huston's fee to $4,000 and that Huston admitted the attorney fee he had been paid was excessive.
With regard to Huston's conduct during the Counsel for Discipline's investigation of Seever's complaint, although the referee found that Huston had cooperated fully during the investigation, the referee concluded that Huston's representation to the Counsel for Discipline's office regarding Johnson's inability to recall the fee agreement was untrue, concluding that Johnson clearly recalled the fee agreement and that his recollection was at odds with the affidavit prepared by Huston. The referee also determined that there was no satisfactory explanation for the omission of Johnson's July 6, 1999, letter from the office file when that file was forwarded to the Counsel for Discipline's office.
In addition to the facts recited above, the referee stated in his report that Huston had been an attorney in the Broken Bow area for 49 years. He had four children, three of whom were lawyers and one who was the executive director of a national *921 organization headquartered in Washington, D.C. Huston had been a community leader, serving as a member of the Broken Bow School Board, vice president of the Nebraska Junior Chamber of Commerce, president of the Broken Bow Chamber of Commerce, and a founding director of the Custer County Foundation. He has been an active supporter of the University of Nebraska, a member of the President's Advisory Council, and a supporter of the Nebraska Humanities Council.
Huston had served as president of the Custer County Bar Association and as host for several regional bar meetings. He provided pro bono legal services to many community organizations, including the Custer County Association for Retarded Children. The referee also received many letters in support of Huston.
The referee concluded that Huston admitted his misconduct and acknowledged responsibility for his actions. He cooperated fully with the disciplinary proceedings. His failure to deposit client funds into a trust account before performing the work proceeded from a good faith belief that such a practice was permissible as an engagement retainer. He was remorseful for his transgressions. The referee did not note whether Huston had had any prior disciplinary proceedings.
In his report, the referee specifically found by clear and convincing evidence that Huston had violated DR 1-102(A)(1),(4), and (5); DR 2-106; DR 9-102(A); and his oath of office as an attorney. With respect to the sanction which ought to be imposed for the foregoing violations and considering the mitigating factors the referee found present in the case, the referee recommended that Huston be suspended from the practice of law for 6 months.

ANALYSIS
A proceeding to discipline an attorney is a trial de novo on the record, in which this court reaches a conclusion independent of the findings of the referee; provided, however, that when the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. State ex rel. NSBA v. Mefferd, 258 Neb. 616, 604 N.W.2d 839 (2000). To sustain a charge in a disciplinary proceeding against an attorney, a charge must be established by clear and convincing evidence. Id.
Based on the record and the undisputed findings of the referee, we find that the above-recited facts have been established by clear and convincing evidence. Based on the foregoing evidence, we conclude that Huston engaged in conduct which was prejudicial to the administration of justice, in violation of DR 1-102(A)(5), by unnecessarily delaying payments to beneficiaries of the McCallister estate. We conclude that the $9,500 fee Huston collected for his work on the McCallister estate was excessive, in violation of DR 2-106. We conclude that Huston violated DR 9-102(A) by depositing unearned attorney fees he received into his personal account instead of his trust account. We conclude that by virtue of Huston's untrue statement concerning Johnson's recollection of the attorney fee agreement and failure to deliver the entirety of his office file on the McCallister estate to the Counsel for Discipline, he has engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of DR 1-102(A)(4). We further conclude that Huston has violated DR 1-102(A)(1) and the attorney's oath of office, see § 7-104.
*922 We have stated that "[t]he basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances." State ex rel. NSBA v. Brown, 251 Neb. 815, 821, 560 N.W.2d 123, 128 (1997). Accord State ex rel. NSBA v. Gridley, 249 Neb. 804, 545 N.W.2d 737 (1996). Neb. Ct. R. of Discipline 4 (rev.2001) provides that the following may be considered by the court as sanctions for attorney misconduct: (1) disbarment; (2) suspension for a fixed period of time; (3) probation in lieu of suspension, on such terms as the court may designate; (4) censure and reprimand; or (5) temporary suspension.
With respect to the imposition of attorney discipline in an individual case, we have stated that "[e]ach case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case." State ex rel. NSBA v. Rothery, 260 Neb. 762, 766, 619 N.W.2d 590, 593 (2000). For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding. State ex rel. NSBA v. Freese, 259 Neb. 530, 611 N.W.2d 80 (2000); State ex rel. NSBA v. Denton, 258 Neb. 600, 604 N.W.2d 832 (2000). We have previously set out the factors which we consider in determining whether and to what extent discipline should be imposed:
To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following facts: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.
State ex rel. NSBA v. Rothery, 260 Neb. at 766, 619 N.W.2d at 593. Accord, State ex rel. NSBA v. Howze, 260 Neb. 547, 618 N.W.2d 663 (2000); State ex rel. NSBA v. Mefferd, 258 Neb. 616, 604 N.W.2d 839 (2000).
We have noted that "[t]he determination of an appropriate penalty to be imposed on an attorney also requires consideration of any mitigating factors." State ex rel. NSBA v. McArthur, 257 Neb. 618, 631, 599 N.W.2d 592, 601 (1999). An isolated incident not representing a pattern of conduct is considered as a factor in mitigation. State ex rel. NSBA v. Bruckner, 249 Neb. 361, 543 N.W.2d 451 (1996). Finally, the propriety of a sanction must be considered with reference to the sanctions imposed by this court in prior cases presenting similar circumstances. State ex rel. NSBA v. Rothery, supra; State ex rel. NSBA v. Howze, supra.
As we have stated, Huston's conduct violated numerous provisions of the Code of Professional Responsibility and violated his oath of office as an attorney, and we do not condone it. In particular, we note that this case presents the misappropriation or commingling of client funds. We have previously stated that absent mitigating circumstances, the appropriate discipline in cases of misappropriation or commingling of client funds is disbarment. State ex rel. NSBA v. Howze, supra. Mitigating factors overcome the presumption of disbarment in misappropriation and commingling cases only if they are extraordinary. Id. A review of the facts in this case persuades us that the presumption of disbarment has been overcome.
Huston's violation of his oath of office as an attorney and his violation of the ethical standards governing the conduct of attorneys *923 are serious matters. Although the misconduct charged was an isolated incident, we must impose a disciplinary sanction to deter others from misconduct similar to Huston's in order to protect the public and to maintain the reputation of the bar as a whole. This court has found suspension to be the proper punishment in situations where the violation was grievous but the totality of the circumstances warranted some leniency. See, State ex rel. NSBA v. Bruckner, supra; State ex rel. NSBA v. Gleason, 248 Neb. 1003, 540 N.W.2d 359 (1995).
Upon due consideration and after a de novo review of the record and a balancing of Huston's offenses with all mitigating factors, the court agrees with the referee's recommendation and concludes that Huston should be suspended from the practice of law in the State of Nebraska for 6 months.

CONCLUSION
When we balance the need to protect the public, the nature of Huston's offense, the need for deterring others, and the reputation of the bar as a whole against Huston's interest in preserving his privilege to practice law and all mitigating circumstances, we conclude that the appropriate discipline is to suspend Huston from the practice of law in the State of Nebraska for 6 months, effective immediately. Pursuant to Neb. Ct. R. of Discipline 23(B) (rev.2001), the costs of these proceedings are assessed against Huston.
JUDGMENT OF SUSPENSION.