STATE OF NEBRASKA EX REL. SPECIAL COUNSEL FOR DISCIPLINE OF THE NEBRASKA SUPREME COURT, RELATOR, V. RICHARD M. FELLMAN, RESPONDENT.

678 N.W.2d 491

Filed April 23, 2004.   No. S-02-540.

Dean Skokan, Special Counsel for Discipline, for relator.

John R. Douglas and David A. Blagg, of Cassem, Tierney, Adams, Gotch & Douglas, for respondent.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

## NATURE OF CASE

The office of the Counsel for Discipline of the Nebraska Supreme Court filed formal charges against Richard M. Fellman alleging that Fellman violated several provisions of the Code of Professional Responsibility and his oath of office as an attorney. After a formal hearing, the referee concluded that Fellman had violated the Code of Professional Responsibility and his oath of office and recommended a suspension of 90 days followed by 2 years' probation. Fellman takes exception to the referee's findings and recommended sanction.

## BACKGROUND

Fellman was admitted to the practice of law in Nebraska on June 19, 1959. He has practiced law in Douglas County, Nebraska, since 1960. For the last 15 or 20 years, his practice has primarily involved domestic relations, personal injury, and workers' compensation matters.

The formal charges filed against Fellman in this case arise out of his representation of Henry Peoples in a child support and visitation case. Peoples, of Las Vegas, Nevada, initially contacted Fellman on February 28, 2000, regarding his son, who lived in Omaha with his mother, Valerie Davis. Fellman's notes of the conversation indicate that Peoples sought joint custody of his son as well as visitation in Las Vegas, telephone contact with his son, notification of his son's progress in school, and some photographs. During their telephone conversation, Fellman estimated

that the total fee for his services would be $2,500 to $3,500. Fellman also required a retainer of $1,000 and a cost deposit of $100. Shortly thereafter, Peoples paid Fellman $1,100. It is undisputed that Fellman deposited the $1,100 in his regular business account. Fellman never billed Peoples for any additional amount, nor did he ever refund any of the $1,100 to Peoples. Fellman testified that if Peoples had asked for a refund, he would have refunded any unearned money to Peoples.

Fellman testified that he was not in contact with Peoples again until May 17, 2000, at which time Peoples provided the Omaha address of Davis. However, the record indicates Peoples attempted to communicate with Fellman several times in April and May 2000, although Fellman contends the notes from these communications were actually from 2001. Nevertheless, on May 17, 2000, Fellman began preparing a petition to file on Peoples' behalf. On May 19, Fellman sent a draft petition to Peoples for his review. A few days later, Peoples returned the draft with corrections and suggestions. This process of revising the petition continued several more times until the petition was finally filed on June 28.

On July 24, 2000, an answer and cross-petition was filed by Davis through her attorney. Davis' cross-petition sought child support and contribution for unreimbursed medical and daycare expenses. On August 2, interrogatories and document requests were served upon Fellman. The interrogatories and document requests went unanswered; therefore, on September 19, Davis' attorney filed a motion to compel answers to discovery and requested that the court impose sanctions. Fellman was given an additional 10 days to answer the interrogatories, but when he again failed to do so, a second motion to compel was filed. Fellman finally answered the cross-petition and interrogatories on November 3.

Fellman's November 3, 2000, answer to the cross-petition and interrogatories came shortly after he informed Peoples, apparently for the first time, that a cross-petition and interrogatories had been filed. This communication occurred by letter dated October 25. Fellman claims that he did not inform Peoples of Davis' cross-petition and interrogatories until October because Fellman believed Peoples would be "inflame[d]" if he learned

of the discovery requests and also because Fellman wanted to settle the case without having to respond to discovery.

On January 2, 2001, Fellman received a notice from the district court advising him that a certificate of readiness must be filed within 30 days. By stipulation between the parties, the deadline for a certificate of readiness was extended until April 30. Fellman did not file a certificate. On May 1, 2001, the district court dismissed Peoples' petition without prejudice for failing to file a certificate of readiness. Fellman described such a dismissal as a common occurrence. The case was reinstated on June 1. A third motion to compel was served on Fellman on June 22, requesting additional income documentation from Peoples that had not been provided with the initial discovery requests. That motion was sustained, and the court ordered Peoples to pay $600 toward Davis' attorney fee. Thereafter, Fellman testified that Peoples, contrary to his initial position, wanted to challenge his paternity. This led Fellman to eventually withdraw from representing Peoples on August 15, 2001.

### PROCEDURAL BACKGROUND

On April 10, 2001, the Counsel for Discipline notified Fellman that he was the subject of a grievance filed by Peoples. Pursuant to Neb. Ct. R. of Discipline 9(E) (rev. 2001), Fellman was required to file an appropriate written response to the grievance within 15 working days. He did not respond. By letter dated May 2, 2001, the Counsel for Discipline notified Fellman that it had not received a response to Peoples' grievance and directed Fellman to respond upon receipt of the letter. Again, Fellman did not respond. Another letter, dated May 17, 2001, was sent to Fellman indicating that the Counsel for Discipline would seek temporary suspension if Fellman failed to respond. On May 25, Fellman filed a response to Peoples' grievance. In his response, Fellman indicated that "[t]he case is again moving along in a normal manner," despite the fact that the case had been dismissed on May 1.

In late July 2001, the Counsel for Discipline requested from Fellman that it be allowed to review Peoples' file. Assistant Counsel for Discipline Kent Frobish visited Fellman's office on August 1. According to Fellman, after Frobish reviewed the file,

Frobish accused Fellman of fraud, dishonesty, and the mishandling of client funds. Fellman testified that Frobish's accusation caused him to panic. Frobish denied making any such accusations. According to Frobish, Fellman appeared nervous during the entire visit, but was cooperative.

On August 7, 2001, the Counsel for Discipline sent a letter to Fellman seeking Fellman's response to several specific questions regarding Peoples' case. Fellman did not respond. The Counsel for Discipline sent another letter to Fellman on November 29, requesting a response within 7 days. No response came. On March 26, 2002, the Counsel for Discipline sent a complaint to Fellman. Fellman finally responded on July 10.

Fellman testified that he could not bring himself to open the letters that he had received from the Counsel for Discipline. He eventually sought professional help. Dr. Bruce Gutnik diagnosed Fellman as suffering from "Specific Phobia," which results in Fellman's feeling anxiety, fear, and panic. Fellman's phobia is triggered by public censure or ridicule.

Formal charges were filed against Fellman on May 17, 2002. Fellman was formally charged with violating his oath of office as well as Canon 1, DR 1-102(A)(1), (5), and (6); Canon 6, DR 6-101(A)(3); and Canon 9, DR 9-102(A)(1) and (2).

### REFEREE'S FINDINGS

After a formal hearing, the referee found Fellman guilty of neglect under DR 6-101(A)(3) in four respects. First, the referee found that Fellman failed to promptly advise Peoples that his custody and visitation requests were not reasonable. Second, the referee found that Fellman delayed the discovery process in failing to promptly notify Peoples that he had been served with interrogatories and in failing to answer those interrogatories. Third, the referee found that Fellman did nothing to bring the case to trial after discovery was essentially completed in December 2000. Finally, the referee found that Fellman failed to return Peoples' telephone calls and e-mails and, more generally, to keep Peoples apprised of the status of his case.

The referee also found clear and convincing evidence of a violation of DR 9-102(A)(2). The referee found that the "retainer" in this case was an advance fee representing work to be done in

the future and should have been initially deposited in Fellman's trust account and withdrawn only as it was earned.

Finally, the referee found that Fellman violated DR 1-102(A)(1), (5), and (6) and his oath of office as an attorney. The referee recommended that Fellman be suspended for 90 days. Upon applying for reinstatement, the referee recommended that Fellman prove that he is fit to practice law under the terms of his probation, including that treatment for his phobia has resulted in a meaningful and sustained recovery. Upon reinstatement, the referee recommended that Fellman be subject to probation for 2 years, during which time he should engage a practicing attorney to act as a practice monitor, subject to approval by the Counsel for Discipline.

## ASSIGNMENTS OF ERROR

Fellman contends, rephrased and consolidated, that the Counsel for Discipline failed to prove by clear and convincing evidence that he violated the Code of Professional Responsibility and his oath of office. Fellman also takes exception to the referee's recommended sanction.

## STANDARD OF REVIEW

A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee; provided, however, that where the evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. Counsel for Dis. v. James, ante* p. 186, 673 N.W.2d 214 (2004). To sustain a charge in a disciplinary proceeding against an attorney, the charge must be established by clear and convincing evidence. *Id.*

## ANALYSIS

### NEGLECT

Fellman was charged with violating DR 6-101(A)(3), which provides in part that "[a] lawyer shall not . . . [n]eglect a legal matter entrusted to him or her." The referee found that Fellman neglected Peoples' case under DR 6-101(A)(3) in four respects.

First, the referee found that Fellman failed to promptly advise Peoples that his custody and visitation requests were not reasonable. During their initial conversation on February 28, 2000, Peoples told Fellman that he wanted joint custody of his son and visitation with his son in Las Vegas, among other things. Fellman testified that in his experience as an attorney practicing law in the domestic relations field, Peoples' expectations were unrealistic. However, Fellman failed to share this opinion with Peoples until shortly before his withdrawal as Peoples' attorney. "A lawyer as adviser furthers the interest of a client by giving a professional opinion as to what the lawyer believes would likely be the ultimate decision of the courts on the matter at hand . . . ." Canon 7, EC 7-5, of the Code of Professional Responsibility. Clients are ill served by attorneys when the attorney cannot be trusted to give frank legal advice.

Second, the referee found that Fellman delayed the discovery process in failing to promptly notify Peoples that he had been served with interrogatories and in failing to answer those interrogatories. The evidence establishes that an answer and cross-petition was filed by Davis on July 24, 2000, and that interrogatories and document requests were served on August 2. Despite this, Fellman neglected to even inform Peoples of these events until October 25.

Third, the referee found that Fellman did nothing to bring the case to trial after discovery was essentially completed in December 2000. Finally, the referee found that Fellman failed to return many of Peoples' telephone calls and e-mails and, more generally, to keep Peoples apprised of the status of his case. Based on all of the above, we find clear and convincing evidence that Fellman neglected a legal matter entrusted to him in violation of DR 6-101(A)(3).

## CLIENT FUNDS

Fellman was also charged with violating the following provisions of the Code of Professional Responsibility:

DR 9-102 Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm shall be deposited in an identifiable account or accounts

maintained in the state in which the law office is situated in one or more state or federally chartered banks, savings banks, savings and loan associations, or building and loan associations insured by the Federal Deposit Insurance Corporation, and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

. . . .

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

The facts surrounding this charge of commingling client funds are undisputed. When first contacted by Peoples, Fellman indicated that he initially required a payment of $1,100—$1,000 in the form of a retainer and a cost deposit of $100. Upon receipt, Fellman deposited the entire $1,100 into his regular business account rather than his trust account. Peoples never asked for the return of any portion of the $1,100, and no allegation was ever made that Fellman did not eventually earn the $1,100. Fellman's handling of the retainer did not serve as a basis for Peoples' complaint to the Counsel for Discipline and was discovered only during the Counsel for Discipline's own investigation of the matter.

Fellman argues that the $1,100 belonged to him upon receipt. He distinguishes it from an advance fee that would have been required to be deposited into a trust account and withdrawn only as earned. Other courts have recognized such distinctions. "General retainers" or "engagement retainers" compensate an attorney for agreeing to take a case and making other commitments to a client that benefit a client immediately. These types of retainers belong to the attorney on receipt. On the other hand, advance fees are payments made by a client for the performance of legal services and belong to the client until earned by the attorney. See, *In re Sather*, 3 P.3d 403 (Colo. 2000); *Iowa Supreme Court Bd. of Ethics v. Apland*, 577 N.W.2d 50 (Iowa 1998). The record in this case reveals no basis to find that the $1,100 was an engagement retainer that belonged to Fellman upon receipt. Upon

receipt of the $1,100, Fellman had not yet done any work on Peoples' case other than discussing the case during their initial telephone call of February 28, 2000. Furthermore, Fellman testified that if Peoples had asked for a refund at any time, he would have refunded any unearned portion of the $1,100 to Peoples. Peoples' payment was still unearned when Fellman received it; i.e., Fellman had yet to provide a benefit or service to Peoples. See *In re Sather, supra.* Therefore, Fellman was required to deposit the $1,100 in his trust account. See, also, *State ex rel. Counsel for Dis. v. Huston,* 262 Neb. 481, 631 N.W.2d 913 (2001) (attorney violated DR 9-102(A) when he deposited unearned attorney fees into his personal account rather than his trust account). We find clear and convincing evidence that Fellman violated DR 9-102(A)(2).

## Misconduct

Fellman was also charged with violating the following provisions of the Code of Professional Responsibility: "DR 1-102 Misconduct. (A) A lawyer shall not: (1) Violate a Disciplinary Rule. . . . (5) Engage in conduct that is prejudicial to the administration of justice. . . . (6) Engage in any other conduct that adversely reflects on his or her fitness to practice law."

The record establishes that on April 10, 2001, Fellman was notified by the Counsel for Discipline that he was the subject of a grievance filed by Peoples. Rule 9(E) requires that an appropriate written response to a grievance be filed with the Counsel for Discipline within 15 working days. Fellman did not file a timely response, nor did he respond to a subsequent letter from the Counsel for Discipline. Only after a third attempt by the Counsel for Discipline, and when faced with an impending temporary suspension, did Fellman file a response to Peoples' grievance. This pattern repeated itself beginning in August 2001, when Fellman failed to respond to the Counsel for Discipline's inquiries regarding Peoples' case. Once again, it took three attempts by the Counsel for Discipline (and nearly a year) before Fellman responded. We find clear and convincing evidence that Fellman violated DR 1-102(A)(1), (5), and (6). We also find, based on all of the above, that there is clear and convincing evidence that Fellman violated his oath of office as an attorney.

DISCIPLINE

To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Villarreal, ante* p. 353, 673 N.W.2d 889 (2004).

Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances. In addition, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases. *State ex rel. Counsel for Dis. v. Janousek, ante* p. 328, 674 N.W.2d 464 (2004). In *State ex rel. Counsel for Dis. v. Huston,* 262 Neb. 481, 631 N.W.2d 913 (2001), an attorney received an initial payment of $5,000, which he believed was an engagement retainer that was earned when received, and deposited it into his personal account. We found that the attorney's actions violated DR 9-102(A) because the fee had yet to be earned when it was deposited into the personal account. In addition, the attorney was also guilty of collecting an excessive fee. The attorney was suspended for 6 months. In *State ex rel. NSBA v. Kelly,* 221 Neb. 8, 374 N.W.2d 833 (1985), the attorney received bond receipts from his clients in lieu of a cash retainer. The attorney forged one of the clients' names and cashed the bond receipts to apply to his fee. Noting the attorney's alcohol dependence, we declined to disbar him and instead suspended him for 1 year.

The above-cited cases aid us in determining the appropriate sanction in this case involving commingling of client funds, as well as neglect and misconduct. In addition, the determination of an appropriate penalty to be imposed on an attorney requires consideration of any aggravating or mitigating factors. *Janousek, supra; Huston, supra; Kelly, supra.* As aggravating factors, we note that Fellman has received four private reprimands from the Counsel for Discipline since 1994 for conduct similar to what occurred in this case. In each of those four matters, Fellman was privately reprimanded for failing to respond to inquiries from the

Counsel for Discipline, in violation of DR 1-102(A). Two of the private reprimands were also based upon Fellman's neglect of a legal matter, in violation of DR 6-101(A)(3).

The mitigating factors in this case include 29 affidavits from active and retired judges and attorneys familiar with Fellman. Each attests to Fellman's integrity, honesty, professionalism, and overall competence to act as an attorney. In addition to these affidavits, we also note Fellman's admirable record of service to the bar and his community. We also consider the phobia that Fellman has been diagnosed with, which causes anxiety and panic in Fellman and which, in the words of Fellman's doctor, "interfere significantly with [Fellman's] normal routine and occupational functioning." Fellman testified that he is taking medication and receiving therapy for his condition. Finally, we note that once Fellman answered the Counsel for Discipline, he was fully cooperative and worked to promptly resolve Peoples' case.

In our de novo review, we conclude that Fellman should be suspended from the practice of law for a period of 1 year. Following his period of suspension, Fellman may apply for reinstatement and shall prove that he is fit to practice law under the terms of his probation. Upon reinstatement, Fellman shall be subject to probation for a period of 2 years and shall be required to engage a practicing attorney to act as a practice monitor during his probation, subject to approval by the Counsel for Discipline.

## CONCLUSION

We find by clear and convincing evidence that Fellman violated DR 1-102(A)(1), (5), and (6); DR 6-101(A)(3); DR 9-102(A)(2); and his oath of office as an attorney. It is the judgment of this court that Fellman be suspended from the practice of law for a period of 1 year and, if reinstated, shall be subject to 2 years' probation as outlined above. He is directed to comply with Neb. Ct. R. of Discipline 16 (rev. 2001), and upon failure to do so, he shall be subject to punishment for contempt of this court. Fellman is also directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 23(B) (rev. 2001).

JUDGMENT OF SUSPENSION AND PROBATION.

HENDRY, C.J., and MILLER-LERMAN, J., not participating.