758 N.W.2d 622 (2008)
276 Neb. 914
STATE of Nebraska ex rel. COUNSEL FOR DISCIPLINE OF the NEBRASKA SUPREME COURT, Relator,
v.
Robert A. FINNEY, Respondent.
No. S-07-533.
Supreme Court of Nebraska.
December 19, 2008.
*624 Kent L. Frobish, Assistant Counsel for Discipline, for relator.
Robert A. Finney, pro se.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.
PER CURIAM.

SUMMARY
The Counsel for Discipline of the Nebraska Supreme Court, relator, charged attorney Robert A. Finney with violating his oath of office under Neb.Rev.Stat. § 7-104 (Reissue 2007) and the following provisions of the Nebraska Rules of Professional Conduct as now codified: § 3-501.5(a) and (f)(1) and (2) (failing to provide accounting for fees and costs when requested); § 3-501.15(a) and (c) through (e) (failing to hold property of clients in his possession separate from his own property in separately maintained account); § 3-501.16(a)(1) and (d) (practicing law without license and failing to protect clients' interests upon termination of representation); § 3-505.5(a) and (b)(2) (engaging in unauthorized practice of law); and § 3-508.4(a) and (d) (engaging in conduct that is prejudicial to administration of justice).
Four counts of misconduct compose relator's charges against Finney. Counts one and two arise from grievances filed by two former clients. Those counts allege that Finney failed to provide an accounting of his time and services after they had requested it. Count two also includes the allegation that Finney failed to timely refund the unearned portion of his advance fee payment. During investigations for this disciplinary proceeding, relator expanded count two to also include allegations that Finney failed to deposit the client's advance fee payment into his trust account.
Counts three and four arose after Finney failed to respond to correspondence from relator's office regarding these grievances. Because of Finney's failure to respond, we temporarily suspended his license to practice law in Nebraska. The two other charges against Finney arose from allegations that he provided legal advice to two clients after we suspended his license.
The referee found clear and convincing evidence to support all four counts. He recommended that Finney's suspension remain in place until we render a final judgment. We agree with the referee's findings that clear and convincing evidence supports counts one and two. But we find that Finney did not engage in the authorized practice of law and dismiss counts three and four. We suspend Finney for 2 years with credit for the time he has been temporarily suspended.

BACKGROUND

FINNEY'S ACTIONS LEADING UP TO THE SUSPENSION
Finney was admitted to practice law in Nebraska on September 18, 1989. Finney is also licensed to practice law in Iowa and South Dakota. After law school, Finney initially worked at the Pottawattamie County public defender's office. After that, for 2½ years, he was a law clerk for a federal judge in U.S. District Court for both the Northern and the Southern Districts of Iowa. Later, in January 1993, Finney was hired by the Dakota County *625 Attorney's office as chief deputy county attorney. In 1996, Finney was appointed as county attorney for Dakota County. He was elected for his own term in 1998 and again for a second term in 2002. Finney was removed as county attorney by recall in 2003, after which he entered private practice. Finney's private practice is located in Sioux City, Iowa, and consists primarily of criminal defense and family law.
The referee found that on November 21, 2006, relator received a grievance letter from Raul Hurtado, a former client of Finney's. Hurtado alleged that he paid Finney a flat fee of $8,000 for representation in a criminal matter. Hurtado claimed that Finney failed to provide an accounting of his services and failed to refund any unearned portion of the fee payment.
In response to relator's letter regarding Hurtado's grievance, Finney wrote to relator on December 22, 2006, indicating that he would meet with Hurtado's family members to discuss their concerns. Hurtado's family had retained Finney on behalf of Hurtado, and the record indicates that Hurtado's family was financing his defense. The record is clear that no meeting ever occurred. Also, Finney never gave any accounting to Hurtado or anyone acting on his behalf.
The record is also clear that after his December 22, 2006, letter, Finney failed to respond to later inquiries by relator regarding Hurtado's complaint. Finney received and responded to the first letter sent by relator informing Finney of Hurtado's grievance. Finney also acknowledged that he received the second letter requesting information regarding Finney's fee arrangement with Hurtado. Finney testified that he instructed his secretary to mail the requested information to relator but admits that he never followed through on whether the information was sent. Relator never received the information. Regarding Hurtado's complaint, Finney also did not respond to six subsequent letters from relator, dating from January 22 to April 23, 2007. Finney denied ever receiving any of these subsequent letters. However, a letter dated March 2, 2007, was sent by certified mail and the signature reads "Robert A. Finney." Finney testified that it was not his signature.
Because of the lack of response, relator eventually upgraded Hurtado's complaint to a formal grievance. Even after the formal grievance notice was sent on March 2, 2007, Finney failed to respond. So relator applied to this court for a temporary suspension. Finney claims that he did not receive notification of relator's application to suspend his license or the order from this court to show cause why his license should not be suspended. Because Finney failed to respond to this court's order, on June 20, we suspended Finney from the practice of law in Nebraska. Finney did admit that he received this court's order of suspension on June 22.
Finney claims that he did not respond to the correspondence from relator because of faulty office procedures and his absence from the office. Finney also testified that when relator was attempting to communicate with him, Finney had an assistant who may have absconded with his mail. Finney and another attorney whom he shared office space with had jointly hired an assistant who they believe hid letters and documents from them. Finney acknowledged that he had no reason to believe that his office did not receive the lettersespecially those sent via certified mail. Yet, he claimed he was never aware of the letters and testified that the signatures on the certified mail receipts were not his. Finney accepted full responsibility for the alleged deficiencies of his office.
*626 Hurtado's complaint was not the only grievance filed against Finney. On January 8, 2007, relator received a complaint from Jerry Kast, who retained Finney to represent him on a driving under the influence charge. Kast had given Finney an advance fee payment of $1,000. Under their written fee arrangement, Finney was to charge Kast $150 per hour. Kast later terminated Finney's representation, at which time he requested an accounting of Finney's time and a refund of any unearned portion of the advance fee payment. Finney did not provide any of the requested information to Kast at that time.
Relator forwarded Kast's complaint to Finney on January 9, 2007, and gave him 15 business days to file an appropriate written response. Finney did not file a response, and on February 15, relator sent another letter. On February 16, Finney faxed a response. Finney blamed his delay in responding on his inability to find Kast's file.
In his response to relator, Finney admitted that he represented Kast and had been paid an advance fee payment of $1,000. Finney claimed to have sent an itemized statement to Kast on August 18, 2006, which showed a $452.50 credit. Finney failed to explain why he did not refund the money sooner; however, Finney did refund the money to Kast on February 16, 2007.
Despite the refund, the referee found that Finney failed to provide sufficient evidence that he had maintained Kast's $1,000 fee in Finney's trust account. His trust account statements showed that he made deposits on July 21 and September 22, 2006. The deposit slips, however, do not indicate which client's funds were being deposited and in what amount; the records show only the total deposit. Because he did not properly maintain his records, Finney cannot state with certainty exactly when he deposited Kast's fee advancement into his trust account or even if he deposited it.

FINNEY'S ACTIONS AFTER THE SUSPENSION
On June 20, 2007, we suspended Finney. We based the suspension primarily upon Finney's lack of response to the grievance filed by Hurtado and his failure to properly maintain Kast's advance fee payment in his trust account. At the time the suspension took effect, Finney was representing Bobby Jo Giersdorf in a custody, visitation, and support case. The court scheduled a hearing on Giersdorf's case for July 31. After his suspension, and before the hearing, Finney advised Giersdorf to appear in court on the scheduled date. He also advised Giersdorf to ask the judge to approve his requested visitation rights and to continue the hearing until Finney could get his license back. Relator claims that because Finney advised his client to ask for visitation, he was engaged in the unauthorized practice of law.
At the hearing, Giersdorf followed Finney's advice. The judge, however, recognized that this court had suspended Finney's license and agreed to continue the case so that Giersdorf could obtain counsel. But the judge stated that he would not base the length of the continuance upon the reinstatement of Finney's license. The judge forwarded a copy of his order to relator, because he believed Finney had engaged in the unauthorized practice of law.
At the time of his suspension, Finney was also representing Jordon Dvorak in a criminal case. The court scheduled Dvorak to enter a plea on July 9, 2007. Before the hearing, Finney impressed upon Dvorak that it was essential that he appear for his court date. Finney also advised Dvorak to ask the judge to continue his hearing until after Finney's license was reinstated. Dvorak followed Finney's *627 advice and asked the court for a continuance. Recognizing that Finney's license was suspended, the judge appointed a public defender to represent Dvorak and reported the matter to relator.
Finney stated that in both Dvorak's and Giersdorf's cases, he believed that he had a duty to prevent prejudice to his clients and that he was acting in their best interests. In Dvorak's case, Finney believed that Dvorak could receive a jail sentence; Finney testified that he impressed upon his client the importance of attending the court date. In Giersdorf's case, the client primarily wanted visitation rights, so Finney advised him to ask the judge for visitation. Finney testified that in both instances, he believed he was giving commonsense advice to his clients and not engaging in the practice of law.

REFEREE HEARING
Finney was the only witness at the hearing. Besides the facts and testimony outlined above, Finney testified that he was suffering from major depressive disorder and dysthymia. These ailments stemmed from his recall in 2003 when he was removed as county attorney for Dakota County. During that time, he was under professional care, was receiving counseling, and was taking antidepressant medication.
Finney admitted that his health and personal problems were not excuses for his behavior, but he believed they affected how he had managed his office and how he responded to relator's inquiries.

REFEREE'S FINDINGS
The referee found that Finney displayed troublesome behavior regarding his own clients and also in how he handled, or failed to handle, these disciplinary proceedings. Regarding count one, the referee found clear and convincing evidence supporting Hurtado's grievance. He further concluded that Finney had violated the Nebraska Rules of Professional Conduct when he failed to provide an accounting of his services to Hurtado (§ 3-501.5(f)(1)) and when he failed to timely and adequately respond to inquires from relator (§ 3-508.4(a) and (d)).
Regarding count two, the referee found clear and convincing evidence that Finney violated the Nebraska Rules of Professional Conduct when he failed to give Kast an accounting of his time and services. He also found that Finney failed to timely refund the unearned portion of the advance fee payment, conduct which violated § 3-501.5(a) and (f)(1) and (2). Finally, the referee found that Finney did not deposit Kast's $1,000 fee advancement into his trust account, which violated §§ 3-501.15(a) and (c) through (e) and 3-501.16(d).
Regarding counts three and four, the referee found clear and convincing evidence that Finney engaged in the unauthorized practice of law. He reasoned that after Finney was suspended, he advised Giersdorf and Dvorak how to proceed at their hearings, violating §§ 3-505.5(a) and 3-508.4(d). In both cases, however, the referee stated that he did not find Finney's failure to file a formal motion to withdraw a violation of the Nebraska Rules of Professional Conduct, because the rules do not explicitly require an attorney to file a formal motion of withdrawal (§ 3-501.16(a)(1) and (d)).
Neither Finney nor relator has filed an exception to the referee's findings of fact. The referee recommended that Finney's suspension, which began on June 20, 2007, continue until the time that this court reached its final decision and that the suspension not continue past that time. After the suspension is lifted, the referee recommended that Finney be on probation for 1 *628 year and that this court appoint a mentor to observe Finney.

ASSIGNMENT OF ERROR
Relator takes exception to the referee's recommended sanction. He argues that Finney's current suspension should be extended beyond the time this court reaches its final decision, because the gravity of Finney's violations requires a more severe sanction than that recommended by the referee.

STANDARD OF REVIEW
A proceeding to discipline an attorney is a trial de novo on the record, in which we reach a conclusion independent of the findings of the referee.[1] The charges against an attorney in a disciplinary proceeding must be established by clear and convincing evidence.[2]

ANALYSIS

FINNEY DID NOT ENGAGE IN THE UNAUTHORIZED PRACTICE OF LAW
The only exception filed relates to the recommended sanction. The parties filed no exceptions regarding the referee's factual findings. We agree with the referee's factual findings regarding counts one and two. But after a de novo review, we find that the record does not establish by clear and convincing evidence that Finney engaged in the unauthorized practice of law.
The referee determined that Finney engaged in the unauthorized practice of law in two ways while he was suspended. First, he advised two clients to attend their court dates and ask for a continuance. Second, Finney told Giersdorf to ask for visitation rights at his hearing. Although an attorney cannot engage in the practice of law during his or her suspension, we recognize that attorneys must handle their suspension in a manner that is not prejudicial to clients. Here, the evidence shows Finney's actions were intended to protect his clients' interests rather than to practice law. The advice Finney gave was necessary to protect his client's interests, because after Finney received notification of his suspension, there was not time to employ another attorney before the clients' court dates.

SANCTIONS FOR VIOLATIONS
The basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances.[3] Here, the primary question before us is whether the discipline should be that recommended by the referee or something else. Under Neb. Ct. R. § 3-304, we may consider and impose the following public sanctions for attorney misconduct: (1) disbarment; (2) suspension for a fixed period of time; (3) probation instead of or subsequent to suspension, on such terms as the court may designate; (4) censure and reprimand; or (5) temporary suspension.[4]
To determine whether and to what extent discipline should be imposed *629 in a lawyer discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.[5] We also consider an attorney's acts both underlying the offenses and throughout the disciplinary proceeding and any aggravating and mitigating circumstances.[6] In addition, we consider the propriety of a sanction with reference to the sanctions imposed in similar cases.[7]
We evaluate each attorney discipline case individually, in light of its particular facts and circumstances.[8] The evidence shows Finney displayed an indifferent attitude toward his practice of law. He ignored requests by his clients for an accounting of his time and services, he failed to timely return his client's unearned advance fee payment, he failed to maintain unearned client funds in a separate trust account, and he continuously neglected to respond to demands made by relator.
Additionally, Finney's lack of cooperation with relator has continued after the hearing on these charges. Because Finney failed to cooperate with his own lawyer, his lawyer withdrew from these proceedings. Furthermore, after his lawyer withdrew, Finney failed to submit to the referee a posthearing brief and a medical report outlining his alleged medical conditions. This conduct undermines Finney's claims that he was unaware of relator's correspondence and this court's order to show cause. Instead, this shows that Finney is either unable or unwilling to cooperate with this disciplinary process.
As mitigating factors, we recognize that during the relevant time, Finney was contending with personal and health issues that undoubtedly caused him mental and financial stress. Since his suspension, Finney entered a rehabilitation facility to address his issues with alcohol and depression. He has sought counseling and is involved in Alcoholics Anonymous. There is also no record of other complaints against Finney.
Relator requests that we suspend Finney for 2 years after we enter a final order in this appeal. Relator has requested a more severe sanction than did the referee because, absent mitigating circumstances, the appropriate discipline in cases of misappropriation of clients' funds is disbarment.[9] That the client did not suffer any financial loss does not excuse an attorney's misappropriation of client funds and does not provide a reason for imposing a less severe sanction.[10]
In the discipline cases where we have approved disbarment, the attorneys involved had engaged in numerous occasions of misappropriation of clients' funds.[11] In Finney's case, it appears that there is only the single incident. Furthermore, the record indicates there were sufficient funds in Finney's trust account to *630 cover the refund and that the refund, while untimely, came from the trust account.
After a de novo review, it is the judgment of this court that Finney be suspended from the practice of law for 2 years with credit to be given for the time he has been temporarily suspended. At the end of the 2-year suspension period, Finney may apply for reinstatement, provided that he has demonstrated his compliance with Neb. Ct. R. § 3-316. It is further provided that his reinstatement, if granted, shall be conditioned on the following: (1) a showing, confirmed by relator, that there are no pending or unresolved disciplinary charges against Finney; (2) a showing that Finney has completed a course on law firm management or a business practices course that has been approved by relator; and (3) a showing by independent, third-party proof that Finney has continued active participation in an alcohol recovery program. If Finney is approved for reinstatement, he shall be on probation for 1 year following reinstatement, during which period Finney will:
(1) be monitored by an attorney approved by relator;
(2) enter into engagement letters with each client, which letter will describe, at a minimum, the services to be provided by Finney to the client, the fee arrangement between Finney and the client, and any requirements imposed by Finney upon the client; and
(3) work with the monitoring attorney to develop and implement appropriate office procedures to ensure that client matters are handled in a timely manner.
In addition, during the period of probation, the monitoring attorney will review any trust account maintained by Finney on a monthly basis and report any trust account irregularity or other disciplinary violation to relator.
Finney is directed to pay costs and expenses in accordance with Neb.Rev.Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. §§ 3-310(P) and 3-323 within 60 days after an order imposing costs and expenses, if any, is entered by the court.
JUDGMENT OF SUSPENSION.
WRIGHT, J., participating on briefs.
McCORMACK, J., not participating.
NOTES
[1] State ex rel. Special Counsel for Dis. v. Fellman, 267 Neb. 838, 678 N.W.2d 491 (2004).
[2] State ex rel. NSBA v. McArthur, 257 Neb. 618, 599 N.W.2d 592 (1999).
[3] State ex rel. Counsel for Dis. v. Dortch, 273 Neb. 667, 731 N.W.2d 594 (2007), citing State ex rel. Counsel for Dis. v. Petersen, 272 Neb. 975, 725 N.W.2d 845 (2007).
[4] See, State ex rel. Counsel for Dis. v. Barnes, 275 Neb. 914, 750 N.W.2d 668 (2008); State ex rel. Counsel for Dis. v. Wadman, 275 Neb. 357, 746 N.W.2d 681 (2008).
[5] See id.
[6] See State ex rel. NSBA v. Johnson, 256 Neb. 495, 590 N.W.2d 849 (1999).
[7] See State ex rel. Counsel for Dis. v. Riskowski, 272 Neb. 781, 724 N.W.2d 813 (2006).
[8] See id.
[9] State ex rel. NSBA v. Howze, 260 Neb. 547, 618 N.W.2d 663 (2000); State ex rel. NSBA v. Malcom, 252 Neb. 263, 561 N.W.2d 237 (1997).
[10] See, id.; State ex rel. NSBA v. Gridley, 249 Neb. 804, 545 N.W.2d 737 (1996).
[11] See Howze, supra note 9.